## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

**FAMILY ONE,** *individually and as guardians and next friends of* **MINOR CHILD ONE,** *et al.,*

      ***Plaintiffs,***

      ***v.***

**ADAM DALE ISAACKS,** *et al.*,

      ***Defendants.***

**No.: 9:22-CV-28-MJT**

### DEFENDANTS LITTLE LEAGUE BASEBALL, INC. AND TEXAS DISTRICT 12 LITTLE LEAGUE'S
### RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Defendants Little League Baseball, Inc. ("LLB"), and Texas District 12 Little League ("District 12") (the "Defendants") file this Response in opposition to Plaintiffs' Motion to Compel ("Motion"), *see* ECF No. 66. Defendants respectfully respond as follows:

### I.       INTRODUCTION

Plaintiffs' Motion is improper and should be denied.  Contrary to Plaintiffs' rhetoric-filled Motion that repeatedly accuses Defendants and their counsel of intentionally violating multiple procedural rules, ethical rules, and court orders, Defendants have consistently acted in good faith and have responded to discovery as quickly, carefully, and thoroughly as possible in the circumstances.  Defendants have faced a plethora of challenges, such as investigating and collecting documents from District 12, an entity with no employees or business infrastructure; investigating the Little League Data Center, a dynamic database with numerous features and levels of access that is not a mere collection of documents or files; and availability of the relevant personnel.  Moreover, because of the subject matter of this lawsuit and the nature and number of

1

Plaintiffs requests for production (over 220)—many of which are plainly overbroad because they seek broad categories of documents from a ten-year period without regard for the relationship of those documents to the events at issue in this case—outside counsel has had to ensure the proper redaction of numerous documents containing sensitive personal information, including that of minors.  That redaction effort is on top of the substantial effort responding to so many requests already required.  Despite the foregoing, Defendants have diligently worked in good faith to respond to discovery and, as discussed below, have produced numerous responsive documents and are working with Plaintiffs to resolve various discovery issues.  Indeed, although discussions with Plaintiffs are ongoing, Defendants believe almost all the issues raised in the Motion have been or are soon to be resolved.  For the issues that remain, the Court should deny the Motion for at least three reasons.

First, although it is difficult to determine exactly what documents or categories of documents Plaintiffs believe the Court should compel Defendants to produce, the Court should deny the Motion because (1) District 12 has produced the relevant documents in its possession, custody, or control responsive to Plaintiffs' requests; (2) LLB has produced the bulk of its relevant, non-privileged responsive documents and expects to complete its production on August 31; and (3) the parties have either conducted or scheduled the depositions Plaintiffs have requested.[1] Although Plaintiffs suggest that Defendants' failure to produce every relevant document by May 20 is somehow proof of intentional obstruction, Defendants have worked diligently and in good faith to gather and produce documents.  Indeed, the complicated nature of this case and the discovery it requires is demonstrated by the fact that—like Defendants—Plaintiffs have required

---

[1]     Defendants note that there is a remaining issue in regard to the deposition of Brent Stahlnecker, which will be the subject of a Motion to Quash.  That issue, however, is not related to this Motion.

additional time to produce relevant documents, such as the Plaintiff children's medical records. Any expectation that parties should or can complete document discovery by the initial disclosure deadline in a complex case like this one is unrealistic.

Second, to address Plaintiffs' objection-related concerns, Defendants have been and are working to amend their respective responses and objections to Plaintiffs discovery requests—even though Plaintiffs requests are objectionable.  Although Defendants were preparing to finalize their amended responses today, Defendants' attorneys conferred with Plaintiffs' attorneys this afternoon and are working to address additional concerns Plaintiffs raised in that conversation.  At this point, serving amended responses once Defendants have completed their document production this Wednesday, and once counsel has evaluated Plaintiffs' concerns, makes the most sense.  In short, Defendants have always acted appropriately and in good faith and hope that the issues related to objections to discovery requests can be resolved by the content of the amended responses, Defendants' recent and forthcoming productions, and by further productive conferences with Plaintiffs' attorneys.

Third, Plaintiffs are incorrect that Defendants must respond to each of Plaintiffs' 227 requests for production by identifying the bates numbers of the produced documents responsive to the request. "A party must produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request."  Fed. R. Civ. P. 26(b)(2)(E)(i) (emphasis added).  As explained below and in the declarations from Defendants and counsel attached to this response, Defendants have produced their documents "as they are kept in the usual course of business." *Id.*  Defendants do not also have to "organize and label [the documents] to correspond to the categories

in the request"—much less respond to each of Plaintiffs 227 requests by identifying the bates numbers of each of the 4,207[2] produced responsive documents.

Additionally, Defendants and their counsel deny Plaintiffs' incorrect allegations—listed in detail below—that Defendants or their counsel have intentionally hidden or attempted to hide relevant documents from the Court.

## II.     ARGUMENT

The Court should deny the Motion because discovery developments render the Motion unsuitable for judicial review[3] and because the Motion's arguments lack merit.

### A.     The Court should deny the Motion because Defendants have proceeded in good faith and believe that the issues the Motion raises have been resolved such that there are no issues suitable for judicial review.

Defendants have worked diligently to respond to discovery and address Plaintiffs' concerns.  Defendants believe that the issues raised in the Motion have been mostly resolved because of the following.

- District 12 has completed its document production and has produced the responsive documents in its possession, custody, or control responsive to Plaintiffs' requests.  Counsel has worked with District 12's volunteer District Administrator to collect all District 12's responsive documents, reviewed the documents, redacted sensitive personal information, including of minors, and produced all of the 94 documents that are relevant to the claims and defenses in this case and responsive to Plaintiffs' requests for production.  Ex. 11, Fox Dec. ¶ 3.  Counsel also collected District 12 District Administrator Jennifer Roebuck's

---

[2]     This number will be greater once LLB completes its production on August 31.

[3]     Defendants also reject the notion that any issue was sufficiently ripe for the Court's review when Plaintiffs first filed the motion.

entire personal Yahoo.com email account,[4] which includes thousands of emails from 2012 to the present, applied search terms to the emails to locate relevant and responsive documents, reviewed the emails resulting from the search-term culling, redacted sensitive personal information, including that of minors, and produced the 360 emails relevant to the claims and defenses in this case and/or responsive Plaintiffs' requests for production.  *Id.*

- LLB began producing documents on May 20, 2022, and produced additional documents on June 17, 2022, June 29, 2022, and July 20, 2022.  *Id.* ¶ 4.  And since Plaintiffs first attempted to file the Motion in July, LLB has produced almost all the documents in its possession, custody, and control responsive to Plaintiffs' requests, and is in the process of completing the last of its production now.  Counsel collected 33,107 potentially relevant documents from LLB custodians to review.  *Id.*  On August 15, 2022, LLB produced 137 documents, and today, August 29, 2022, LLB produced 3,708 non-privileged documents relevant to the claims and defenses in this case and responsive Plaintiffs' requests for production, and LLB will complete its production of documents on August 31, 2022 once it finishes redacting from the documents personal information, including minors' personal information, from the remaining documents it plans to produce.[5]  *Id.*

---

[4]     Today, Plaintiffs asked Defendants' counsel to search and collect the emails in Ms. Roebuck's email account with her law-firm employer.  This email account is not within District 12's possession, custody, or control.  And although Ms. Roebuck testified that the account contains some emails related to Little League baseball, counsel's understanding is that the law-firm account does not contain emails relevant to the claims or defenses in this case.

[5]     Plaintiffs' argument that Defendants should have gathered and produced every relevant document by the initial disclosure deadline lacks merit at least because many of Defendants' relevant documents in this case contain sensitive information such that they can only be produced with a protective order in place.  At the time of the initial disclosure deadline, the Court had not yet issued a protective order.

- As of August 24, 2022, per an agreement stated on the record at Jennifer Roebuck's deposition, Plaintiffs' and Defendants' respective counsels are negotiating a process by which Plaintiffs can discover more information from the dynamic "Data Center" volunteers can use in connection with Little League activities.  *Id.* ¶ 5.

- Although an unrelated issue remains regarding the deposition of Brent Stahlnecker, all depositions currently requested have been scheduled, including the deposition of Samantha Mahaffey.  *Id.* ¶ 6.  The issue of Samantha Mahaffey's contact information is no longer outstanding.  *Id.*

- Defendants are working diligently to amend the discovery responses about which Plaintiffs complain.  Although Defendants were preparing to finalize their amended responses today, Defendants' attorneys conferred with Plaintiffs' attorneys today and are working to address additional concerns Plaintiffs raised in that conversation.  At this point, serving amended responses once Defendants have completed their document production this Wednesday, and once counsel has evaluated Plaintiffs concerns, makes the most sense.  Defendants intend their respective amended responses and objections to, on a request-by-request basis, (1) specifically identify the objections, if any, based on which the Defendant is withholding responsive documents and (2) state whether the Defendant has produced responsive documents, will produce responsive documents, or has no responsive documents to produce.[6]  Despite Plaintiffs' complaints, Defendant is neither withholding any documents based on Defendants' pending motion to dismiss nor any vagueness objections.

---

[6]    Plaintiffs' suggestion that Defendants must for each of Plaintiffs 227 requests for production identify the bates numbers of each produced document responsive to each request is incorrect for the reasons below.

6

Because of the above developments, the Court should deny the Motion. Defendants' amended responses to Plaintiffs' discovery requests should resolve the motion-to-strike portion of the Motion or at least provide good reason for the Court to wait and evaluate Defendants' new objections and responses rather than ruling on their current, soon-to-be void objections and responses.[7] And Defendants' document productions moot the Motion's motion-to-compel or at least render it unripe for judicial review.

Moreover, the Motion is improper in that it fails to specify what relief Plaintiffs seek. For example, Plaintiffs ask the Court to "strike Defendants' objections to discovery" without identifying which objections they want the Court to strike. The only objections the Motion discusses are the general objections, the objections Plaintiffs contend refer directly to the language in some of Defendants' documents, and objections that some discovery is premature. But Plaintiffs' Motion is not clear that their request to strike is limited to these categories. Similarly, the Motion makes no effort to describe the documents or categories of documents Plaintiffs want the Court to order Defendants to produce. The Motion only asks the Court to order Defendants generally to comply with their discovery obligations and neglects to propose an order that would tell Defendants what Plaintiffs contend needs to be produced. Thus, because the Motion fails to present any issue the Court can resolve, the Court should deny the Motion.

---

[7]     Defendants' proposed response—amended objections and responses—to Plaintiffs' objection-related complaints is proper. Indeed, Courts have ordered Defendants to amend discovery responses in response to similar complaints. *See, e.g.*, *Lee v. Aramark Facility Servs.*, 2021 WL 6070448, at *6 (E.D. La. July 15, 2021) (ordering a defendant to amend discovery responses).

**B.** **Because Defendants have produced—and will continue to produce—documents as they are kept are kept in the usual course of business, the Court should not order Defendants to respond to each of Plaintiffs' 227 requests for production by identifying the bates numbers of the produced documents responsive to the request.**

Although not listed in the Motion's conclusion as one of the matters that Plaintiffs seek to compel, the text of the Motion suggests that Defendants failed to comply with an alleged obligation to respond to each of Plaintiffs' 227 requests for production by identifying the bates numbers of the produced documents responsive to the request.  The Motion does not explain why Plaintiffs believe this is required.  To the extent Plaintiffs seek to compel Defendants to respond in this manner, the Court should deny the request

Federal Rule of Civil Procedure 34 governs the manner in which a party may produce documents.  "A party must produce documents as they are kept in the usual course of business ***or*** must organize and label them to correspond to the categories of the request."  Fed. R. Civ. P. 34(b)(2)(E)(i) (emphasis added).  Although the rule provides two options to the responding party, Plaintiffs ignore the first half of the provision and claim Defendants must comply with the second half.

But a party need not "identify which documents correspond with which request" when the party produces documents as kept in the ordinary course of business.  "'Rule 34 requires a party to [either] produce documents as they are kept in the usual course of business or to organize and label them to correspond to the categories in the request'—***the party is not required to do both***." *Dartson v. Villa*, 2018 WL 3528721, at *3 (N.D. Tex. Apr. 2, 2018) (emphasis added) (quoting *Turner v. Nationstar Mortg. LLC*, 2015 WL 11120879, at *2 (N.D. Tex. May 14, 2015).  If the requesting party challenges the manner of production, the producing party is required to present the court with competent evidence that the documents were produced as kept in the usual course of business." *Dartson*, 2018 WL 3528721, at *3.

Although the Motion does not directly challenge the fact that Defendants have produced documents as maintained in the usual course of business, correspondence from Plaintiffs' counsel makes that assertion.  Thus, in an abundance of caution, Defendants will assume that the Motion challenges Defendants' productions, and Defendants have submitted with this response the competent evidence mentioned above.

When looking at whether documents were produced as kept in the usual course of business, the court in *McKinney/Pearl Restaurant Partners, L.P. v. Metropolitan Life Ins. Co*., 322 F.R.D. 235 (N.D. Tex. 2016) found instructive the "extensive discussions of these requirements" set forth in the seminal opinion *Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274 (M.D. Fla. Oct. 25, 2013):

> [Rule 34(b)(2)(E)(i)'s] production log requirement was added to the Federal Rules of Civil Procedure to prevent part[ies] from obscuring the significance of documents by giving some structure to the production. It forbids "dump truck" discovery tactics, where a party delivers voluminous and poorly organized documents to his adversary, who is forced to rummage through piles of paper in search of what is relevant. To comply with the rule, a party must rationally organize[ ] its productions, so that the requesting party may readily identify documents, including ESI, that are responsive to [the] production requests.
> . . .
> Because businesses have an incentive to keep their documents in a manner that allows ready access, a production of documents as kept in the ordinary course of business should permit a systemized retrieval of relevant documents. This requires a party to organize its production in such a way as to enable the requesting party to substantially replicate the system used by the producing party, whether the production is ESI or paper documents. For example, if a party keeps responsive documents or ESI "in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." Fed R. Civ. P. 34, Advisory Committee Notes, 2006 Amend.
>
> The most obvious means of complying with the [usual course of business requirement] is to permit the requesting party to inspect the documents where they are maintained, and the manner in which they are organized by the producing party. For documents stored electronically, producing a forensic duplicate of a storage device is also sufficient. If a party chooses to produce files but not the devices (or forensic copies of the devices) on which the files are stored, the manner of production determines whether the files are produced as they are kept in the usual

course of business. To satisfy the usual course of business requirement, the mode of production should preserve the functional utility of the electronic information produced. As the following discussion shows, this normally requires (1) preserving the format of the ESI and (2) providing sufficient information about the context in which it is kept and used.

Production "as kept in the ordinary course of business" generally requires turning over electronic documents in the format in which they are kept on the user's hard drive or other storage device. A file that is converted to another format solely for production, or for which the application metadata has been scrubbed or altered, is not produced as kept in the ordinary course of business. If a document is maintained on a hard drive or in a storage device in the form in which it is created and edited (its "native" format, in the technical sense of the term), it must be produced in native format to be produced as it is kept in the ordinary course of business. Preservation of format is important because conversion from native format may eliminate or degrade search and other information processing features (e.g., copy, paste, and sort). Such features may allow a user to identify relevant information in a document much more quickly, which would significantly enhance the value of a document to a business. Allowing a party to defeat this functionality would undermine the purpose of producing information as it is kept in the usual course of business.

Second, the producing party must provide information about where the documents are kept and how they are organized. For documents stored on a computer or external storage device, this means providing system metadata indicating at least the file name and path for produced files. The files and system metadata, must be organized in a manner that "permits systemized retrieval" of files based on the metadata. In other words, the requesting party must be able to search for and readily access files with particular characteristics (e.g. all.doc files in X folder).

For emails, the relevant context is somewhat different. A user typically views emails not in a file browser, but in an email client. While the relevant organizational information for files viewed in a file browser is file name and path, the relevant information in an email client is the date the email was transmitted, perhaps along with the parties to the email (sender and recipients), and the subject line.

*McKinney/Pearl*, 322 F.R.D. at 249–50 (quoting *Teledyne*, 2013 WL 5781274, at *8–10).

Defendants meet the standard for production as shown through the attached declarations of Christina Taddeo, Andy Frederick, Jennifer Roebuck, and Will Fox, who testify that they collected and produced documents in the format in which they were stored.  Ex. 1, Taddeo Dec. ¶ 3; Ex. 2, Frederick Dec. ¶ 3; Ex. 3, Roebuck Dec. ¶ 3; Ex. 11, Fox Dec. ¶ 7.  This testimony satisfies the requirements of Rule 34(b)(2)(E)(i).   *McKinney/Pearl*, 322 F.R.D. at 250.   Additionally,

Defendants also attached testimony that they each produced ESI in a searchable and sortable form, paired with relevant metadata and load files.  Ex. 1, Fox Dec. ¶ 7.  This testimony satisfies the requirements of Rule 34(b)(2)(E)(ii).  *McKinney/Pearl*, 322 F.R.D. at 250.

The authorities Plaintiffs have cited in their correspondence are inapposite.  Although not cited in the Motion, Plaintiffs provided numerous cases to Defendants in their correspondence that Plaintiffs claim require a party to identify each document responsive to each request.  But those cases show that no such obligation exists.  *See, e.g.*, *Garcia v. Pro. Cont. Servs., Inc.*, No. A-15-CV-585-LY, 2016 WL 11431533, at *1 (W.D. Tex. Dec. 9, 2016), *on reconsideration in part sub nom. Garcia v. Prof. Cont. SVCS, Inc.*, No. A-15-CV-585-LY, 2016 WL 7324099 (W.D. Tex. Dec. 15, 2016) (noting that a party can produce documents **_either_** as kept in the ordinary course or identify them by each document request).  Instead, the cases that required a party to identify responsive documents by bates label did so in court orders as a response to a party's clear failure to comply with their discovery obligations.  *See, e.g.*, *Moser v. Navistar Int'l Corp.*, 2018 WL 3614012, at *3 (E.D. Tex. July 27, 2018) (finding for movant because the corporate trustee that responded to the document request literally produced **_every document in the company_** in boxes stored in his office without determining if the material was responsive or how it was kept by the business); *Brown v. Bridges*, 2014 WL 2210510, at *3 (N.D. Tex. May 27, 2014) (finding for movant because a plaintiff had moved all corporate records into a storage facility and, claiming that the defendants had asked for everything, simply opened up the storage facility without examining materials or showing that they were kept in that manner in usual business operations).  In contrast, Defendants searched their files, reviewed documents for relevance and responsiveness, and produced documents as they were kept in the usual course of business.  Ex. 1, Taddeo Dec. ¶ 3; Ex. 2, Frederick Dec. ¶ 3; Ex. 3, Roebuck Dec. ¶ 3; Ex. 11, Fox Dec. ¶ 7.  Defendants simply

have not made the kind of indiscriminate document dump that warranted relief in the cases Plaintiffs cite.

Thus, as the court ruled in *McKinney/Pearl* when faced with almost identical evidence, Defendants have met their burden of showing that they produced their documents as the documents were kept in usual course of business such that the Federal Rules do not require Defendants to respond to each of Plaintiffs numerous documents requests by providing the bates numbers of every produced document responsive to the request.

To date, Plaintiffs have served 112 document requests on District 12 and 115 on LLB— 227 requests in all.  Exs. 4–10.  The requests to either District 12 or LLB overlap in numerous ways such that many documents either defendant has produced are responsive to multiple requests directed to that Defendant.  For example, requests 28 through 30 in Plaintiffs third set of requests to LLB are below:

28.  Produce all communications sent to support@littleleague.org concerning allegations of child abuse for the last (10) ten years.

RESPONSE:

29.  Produce all communications including, but not limited to, emails (with attachments), text messages, reports, memos, letters, etc., received by LLB regarding allegations of child abuse for the last (10) ten years.

RESPONSE:

30.  Produce all communications sent to smahaffey@littleleague.org regarding allegations of child abuse for the last (10) ten years.

RESPONSE:

Ex. 8 at 10.  Because all three requests concern "allegations of child abuse" sent to LLB, many of the same documents are responsive to all three requests.  And this is merely the tip of the iceberg because other document requests seek specific plans, manuals, and notes or ask for emails sent by

or to specific persons.  Many of these requests also have language "concerning allegations of child abuse" such that documents are arguably responsive to these requests too.  This issue is prevalent throughout the discovery.

As such, and because of the number of documents Defendants have produced (and that LLB will finish producing this week), identifying for each of the 227 requests the bates numbers of each document responsive to the request would be unduly burdensome given the easily navigable form in which Defendants have produced documents.  To date, Defendants have produced thousands of documents.  Plaintiffs want the Court to order Defendants to spend substantial time and money re-reviewing those documents to inform Plaintiffs essentially of the contents of every single document produced.  But the foregoing costly, time-consuming effort would provide Plaintiffs little more than they already have because Defendants have produced (and will continue to produce) documents as they were kept in the usual course of business in searchable formats with metadata and load files.  Ex. 11, Fox Dec. ¶ 7.  In short, no reason exists for the Court to order Defendants to undertake the monumental, uncommon, unwarranted task of sorting through more than 4,000 documents and matching them up to Plaintiffs' 227 requests for production.  To the extent the Motion asks the Court for such an order, the Court should deny the Motion.

> **C.**     **Defendants and their counsel have acted diligently and in good faith throughout the discovery process.**

A theme of Plaintiffs' Motion is the unfounded accusation that Defendants and their attorneys are abusing the discovery process and intentionally hiding relevant information from the Court.  For example, Plaintiffs assert:

- "It has now become obvious that Defendants have embarked upon an intentional course of conduct to withhold documents, impede discovery, and disregard the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders."  Mot. at 1.

- "Defendants are intentionally withholding documents that are contrary to their positions taken in the motion to dismiss."  *Id.* at 2.

- "The fact of the matter is that Defendants have intentionally withheld documents responsive to Plaintiffs' discovery requests in an effort to hide relevant, discoverable evidence that contradicts the positions they assert in their motion to dismiss, which was filed on April 20, 2022."  *Id.*

These allegations are not well-taken, and Defendants and their attorneys deny them in full.  These allegations are untrue and should not distract the Court from the fact that there is no basis for the Court to grant the Motion.

Throughout this case Defendants have acted in good faith to comply with their discovery obligations.  Moreover, because of the subject matter of this lawsuit and the nature and number of Plaintiffs requests for production, in addition to collecting and reviewing tens of thousands of documents, outside counsel has had to ensure the proper redaction of numerous documents containing sensitive personal information, including that of minors.  Nevertheless, District 12 has been able to gather, review, redact as appropriate, and produce the documents it has and its Administrator's relevant emails.  LLB has also collected, reviewed, redacted, and produced thousands of documents and emails from multiple custodians and sources within LLB.  Any delays Plaintiffs perceive—if they can even be fairly characterized as delays—have therefore resulted from the nature and circumstances of this case.  The notion that Defendants or their counsel have

14

engaged in unethical behavior or otherwise attempted to hide relevant evidence from the Court or Plaintiffs is simply incorrect.

### III.        <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated: August 29, 2022                    Respectfully submitted,

<div style="margin-left:40%">

*/s/ Brandon Duke*
Matthew D. Orwig
Texas Bar No. 15325300
morwig@winston.com
Geoffrey Harper
Texas Bar No. 795408
gharper@winston.com
William Fox
Texas Bar No. 24101766
wfox@winston.com
Ashley J. Wright
Texas Bar No. 24100390
ajwright@winston.com
**Winston & Strawn LLP**
2121 N. Pearl Street, Suite 900
Dallas, Texas 75201
Telephone: 214-453-6500
Facsimile: 214-453-6400

Brandon W. Duke
Texas Bar No. 24094476
bduke@winston.com
Isaac B. Villarreal
Texas Bar No. 24110488
ivillarreal@winston.com
**Winston & Strawn LLP**
800 Capitol Street, Suite 2400
Houston, Texas 77002
Telephone: 713-651-2600
Facsimile: 713-651-2700
***Counsel for Defendants Little League Baseball, Inc. A/K/A Little League International and Texas District 12 Little League***

</div>

## <u>CERTIFICATE OF SERVICE</u>

      I certify that a true and correct copy of the foregoing document has been served on all known counsel of record by electronic service on August 29, 2022.

*/s/ Brandon Duke* _____